SOUTHWESTERN STAGE COMPANY V. ROBERT PECK.

1. CONTRACT; *Agreement to Pay on Delivery of Goods; Action; Defense.* P. contracted with a stage company to deliver to it fifty tons of hay, the first ten tons not to be paid for until all delivered, and the remainder to be paid for as delivered. In pursuance of said contract, after delivering the first ten tons, P. delivered two tons, and demanded his pay therefor, and the company refused to pay for them: *Held,* That an action would lie at once for the whole twelve tons delivered, and that the company could not set up the contract in defense of any present liability for the ten tons, or as the foundation of a claim against P. for damages for failing to deliver the remaining thirty-eight tons.

2. ———— *Breach of Contract.* Upon a contract to deliver hay at so much a ton, to be paid for as delivered, the vendor is entitled to pay for each ton as soon as it is delivered; and he does not, by failing to demand pay until several tons have been delivered, waive his right thereto as to each ton delivered, or to treat the vendees' then refusal to pay for any ton, as a breach of the contract.

*Error from Cherokee District Court.*

THE opinion of the court contains a full statement of the facts and proceedings. *Peck* had judgment at the January Term 1875, and the *Stage Company* brings the case here.

*McComas & McKeighan,* for plaintiff in error.

*Matheny & Ritter,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error before a justice of the peace of Cherokee county, to recover for twelve tons of hay, claimed to have been sold to

plaintiff in error at the price of $3 per ton. Peck recovered judgment for $36, from which judgment an appeal was taken by the company to the district court. At the April term 1874 of said court, the case was tried before a jury. Peck recovered a verdict for $6, which, on motion of the stage company, was set aside. At the October term 1874, the case again was brought on for trial. Peck's evidence introduced; objection to company's evidence sustained; leave given to file amended answer; jury discharged, and cause continued. The company filed an amended answer, setting out the contract under which the hay was delivered, claiming a performance, and alleging a breach on the part of Peck, and asking judgment for damages sustained. At the January term 1875, the case was again tried; judgment for Peck for $38.65; motion for new trial overruled.

The errors mainly complained of are errors in giving and refusing instructions. The contract was in writing, and there was no dispute as to what the contract was. It was in substance a contract for the sale and delivery by Peck to the company of fifty tons of hay at $3 per ton, the first ten tons not to be paid for until the entire fifty tons were delivered. The remainder of the hay was to be paid for as delivered. There was no dispute, and the testimony showed, on both sides, the following facts: That on the 27th of October 1873, Peck had delivered about fifteen tons, ten tons of course of which he was not to be paid for until he delivered all the hay; that at that date he was paid $9; that afterward, and up to the 13th of November, the plaintiff delivered between three and four tons, for which, before the commencement of this action, he received his pay. After that came the divergence in the testimony, the plaintiff introducing evidence tending to show that when the $9 was paid there was a dispute as to whether two tons were good and merchantable, as stipulated in the contract; that the plaintiff did not accept the $9 as payment in full for the hay which the defendant then owed for; that the last of November the plaintiff demanded pay for the two tons, which defendant refused on the ground that

said two tons were not good, and plaintiff had accepted said $9 as payment in full; that the plaintiff then refused to deliver any more, and that the two tons were good and merchantable hay. On these controverted points the company introduced evidence tending to show that the two tons delivered prior to October 27th were not good hay, and that the plaintiff was told not to put it in the barn; that this amount was by the assent of plaintiff deducted, and $9 accepted in full for which pay was then due; that subsequent to the 13th of November the plaintiff was requested to go on and deliver more hay, who at first said he could not, but promised to have it delivered, and that a few days afterward he demanded $6 in payment of the two tons delivered as a condition for further performance, which being refused, he refused to deliver any more hay. The company also showed, which was not contradicted, that when Peck made his final refusal hay had advanced from $3 to $5 and $6 per ton.            .

The foregoing statement of the case is taken from the brief of plaintiff in error, and upon this statement counsel for plaintiff in error say:

"On such a state of facts we claim that the instructions of the court were wrong, not merely in some particular parts, but in their entire scope and aim, although the instructions do not point out what would excuse Peck from performing his contract; yet in view of the general features of the case, the leading idea of the court probably was, that if the jury found that the company failed to pay for the two tons of hay, such failure excused Peck from performing his contract, and authorized him to treat the contract as annulled or rescinded."

We think this is a fair statement of the case, and that if the failure of the company to pay for the two tons, they being good and merchantable hay, excused Peck from delivering any more hay, then no substantial wrong has been done plaintiff in error, and the judgment must be affirmed. It will be observed that, outside and independent of the contract, under the testimony, Peck's right to recover would be unquestioned. He had delivered twelve tons of hay, and the company had accepted and appropriated them to its own use. It was there-

fore *prima facie* bound to pay for them. It had paid at the same time $3 a ton to plaintiff for hay. And this would be *prima facie* sufficient evidence of value. It interposes this contract as a defense to Peck's claim, and as a basis to its claim for damages. But it is guilty of the first breach. Can it say that that contract which it has broken is still in force, and operative to defeat plaintiff's otherwise just claim? Can it insist upon Peck's performance of the contract when it has failed to perform? Is it any more binding upon Peck than upon it? It is generally true, that the party who is guilty of the first breach of a contract can neither found a right of action upon such contract, nor make it the basis of defense to an otherwise just claim. And we think this case furnishes no exception to the general rule. After the first ten tons had been delivered, the hay was to be paid for as delivered. Upon the delivery of each ton Peck was entitled to his pay therefor, and if the company then refused it was guilty of a breach. But say counsel, Peck delivered hay after the refusal to pay for the two tons, and therefore waived his right to insist upon the breach. We do not so understand the testimony, or the contract. We do not understand that there was any refusal to pay for these two tons until after the 13th of November. There was a dispute as to whether these two tons were good and merchantable hay, which, according to Peck, was left unsettled, and according to the company was settled by Peck's conceding that they were not. According to the verdict of the jury, Peck's statement must be held to be the correct one. There was therefore no distinct refusal to pay, no positive breach, until after Peck had delivered all the hay which he did deliver. He delivered nothing after the company refused to pay. And we do not understand that upon the delivery of each separate ton Peck was under obligations to make a specific demand for the pay for that ton, or on failure to do so waived the right to insist upon a subsequent refusal to pay as a breach of the contract. His right to pay existed at the delivery of each ton, and the right continued, although not insisted upon, until several tons had been delivered. We

think therefore the first breach is chargeable to the company, and that there was no waiver of the right to insist upon that breach.

. The judgment will be affirmed.

All the Justices concurring.